IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COREY STEWART, TDCJ #1717765, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-17-0264 |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice - Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Texas inmate Corey Stewart has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1), seeking relief under 28 U.S.C. § 2254 from a state court capital murder conviction that resulted in a sentence of life without parole. Pending before the court is Respondent Lorie Davis's Motion for Summary Judgment with Brief in Support ("Respondent's MSJ") (Docket Entry No. 26). Stewart has filed Petitioner's Traverse to Respondent's Return and Answer Pursuant to 28 U.S.C. § 2254(e)(1), and Rule 5(e) ("Petitioner's Traverse") (Docket Entry No. 37), along with a Motion for Expansion of Record (Docket Entry No. 35) and a Motion for Appointment of Counsel if the court orders an evidentiary hearing (Docket Entry No. 36). After considering all of the pleadings, the state court records, and the applicable law, the court will grant Respondent's MSJ and will dismiss this action for the reasons explained below.

# I. **Background**

In Brazos County cause number 10-02913-CRF-361, Stewart was charged with capital murder in connection with the death of Johannes Kinny,[1] who was shot and killed early in the morning of April 2, 2010, during the course of a robbery at an Exxon convenience store in College Station, Texas, where Kinny worked as an overnight cashier.[2] Security camera footage showed that Kinny was shot in the chest during a confrontation with Stewart's accomplice, Joshua Evans.[3] Stewart, who was armed with a knife,[4] struck Kinny several times during that altercation.[5] Stewart and Evans then went behind the counter and took the store's cash drawer.[6] Although Kinny sustained at least two stab wounds to his back, he died as a result of the gunshot wound inflicted by Evans.[7]

Law enforcement set up a mobile command center at the Exxon station to coordinate reports from the investigating officers and

---

[1]Indictment, Docket Entry No. 27-1, p. 8. For purposes of identification, all page numbers for docket entries in the record refer to the pagination inserted by the court's electronic filing system, CM/ECF.

[2]Court Reporter's Record, vol. 5, Docket Entry No. 27-19, p. 9.

[3]Court Reporter's Record, vol. 6 (part one), Docket Entry No. 27-20, pp. 101-06.

[4]Id. at 27.

[5]Id. at 40.

[6]Id. at 27, 41.

[7]Court Reporter's Record, vol. 6 (part two), Docket Entry No. 28-1, pp. 14-16, 21, 31.

to disseminate information that was being collected by detectives.[8] As the investigation commenced on April 2, 2010, police received information about another violent robbery that had occurred recently at another Exxon station in nearby Bryan, Texas, which they believed could be related.[9] In addition, two local residents (Jessica Greeno and Devoris Harris) came forward and identified one of the perpetrators shown in the security footage as one of three men who had robbed them at gunpoint the previous week on March 27, 2010.[10] Greeno told Detective Michael Lohse that thirty minutes before arriving at their interview she had seen the man who was armed with the gun during that robbery (later identified as Stewart) and that he was driving a white and blue Lincoln bearing the Texas license plate number HCK 814.[11]

Police recovered the stolen cash drawer from a dumpster in front of an apartment building that was within walking distance from the College Station Exxon where Kinny was killed.[12] Police noted that a white and blue Lincoln had been seen parked next to the dumpster where the stolen cash drawer was found.[13] The Lincoln

---

[8]Court Reporter's Record, vol. 2, Docket Entry No. 27-15, pp. 47, 51-52, 66-68.

[9]Id. at 43.

[10]Id. at 103-15.

[11]Id. at 105-06.

[12]Id. at 37, 38-39.

[13]Id. at 37, 106.

had license plate number HCK 841, which nearly matched the number provided by Greeno.[14]  Police who were canvassing the area had encountered Stewart in front of the apartment complex where Stewart was living with his girlfriend.[15]  Stewart was questioned by Detective Danny Junek, who noted that Stewart had the same build as one of the suspects depicted in the security footage of the offense.[16]  Junek became even more suspicious after it was later reported that Stewart was seen leaving the apartment complex in the Lincoln along with another male who met the description of the other suspect.[17]  Based on this information the detective who was in charge of the investigation at the command center (Sergeant Woodward) put out a BOLO (be on the look out) for the Lincoln, with instructions to find a way to stop the vehicle and detain the occupants for questioning in connection with the robbery and murder that had occurred earlier that day.[18]

Officer Ian Mader, who had been with the College Station Police Department for less than a year, watched the surveillance footage of the robbery at the start of his shift on the afternoon of April 2, 2010, and heard the BOLO while he was out on patrol.[19]

---

[14]_Id._ at 37, 106.

[15]_Id._ at 39-40, 42.

[16]_Id._ at 44.

[17]_Id._ at 45-46, 57-58.

[18]_Id._ at 9, 111-12.

[19]_Id._ at 8-9, 16.

Officer Mader located the Lincoln and reported it to a dispatch officer who told Mader to try and make a stop for probable cause based on a traffic violation, rather than making a "suspicious person stop."[20]  While coordinating with other officers, Mader stopped the vehicle and detained all three occupants after he observed that the driver (Stewart) failed to signal the required distance before making a turn.[21]  Although Stewart had signaled his intent to turn, Mader did not believe that the signal had been made more than 100 feet from the turn, which is a traffic violation under Texas law.[22]  Stewart was detained for the traffic violation, for failing to have a driver's license, and for being in possession of marijuana.[23]

Officers identified Joshua Evans and his cousin, Jeremy Evans, as the passengers in the Lincoln that Stewart was driving when it was stopped by Officer Mader.[24]  Greeno and Harris viewed photographic lineups and identified Stewart, Joshua Evans, and Jeremy Evans as the men who robbed them on March 27, 2010.[25]

Detective Travis Lacox arrived at the scene of the traffic stop and questioned Stewart as he sat hand-cuffed in the back of a

---

[20]Id. at 11-12.

[21]Id. at 13.

[22]Id.

[23]Id. at 14-15.

[24]Id. at 114.

[25]Id. at 115.

patrol car.[26] After Lacox read Stewart his <u>Miranda</u> warnings, he showed Stewart surveillance photos from the robbery that occurred at the Exxon station in Bryan, and Stewart admitted taking part in that offense.[27]

Stewart was given <u>Miranda</u> warnings again several days after his arrest and gave a recorded statement admitting his role in the robbery of the Exxon in College Station, during which Johannes Kinny was killed.[28] Items taken from Greeno and Harris were recovered from a search of the Lincoln, which was impounded after Stewart's arrest.[29] A knife and the gun used to kill Kinny were recovered during a search of Stewart's apartment.[30]

Stewart's defense counsel filed motions to suppress his statements to police and the evidence seized as the result of his arrest, arguing that the traffic stop was invalid.[31] Testimony at the suppression hearing disclosed that Stewart had not, in fact, committed a traffic violation because he did signal his intent to

---

[26]<u>Id.</u> at 70-71.

[27]<u>Id.</u> at 71-72.

[28]<u>Id.</u> at 76-81.

[29]<u>Id.</u> at 126, 132.

[30]Court Reporter's Record, vol. 7 (part one), Docket Entry No. 28-2, p. 66.

[31]Motion to Suppress Statements, Docket Entry No. 27-2, pp. 6-7; Motion to Suppress Evidence Obtained by Illegal Detention of the Citizen Accused, Docket Entry No. 27-2, pp. 19-25.

turn within the required distance.[32] After hearing testimony about how police had identified Stewart as a suspect before the traffic stop was made and the BOLO that had issued for the Lincoln, the trial court denied the motions to suppress.[33]

On June 17, 2011, a jury in the 361st District Court of Brazos County found Stewart guilty as charged of capital murder.[34] Because the State did not seek the death penalty, the trial court automatically imposed a sentence of life imprisonment without the possibility of parole pursuant to Texas Penal Code § 12.31(a)(2).[35]

On direct appeal Stewart argued that the trial court abused its discretion by (1) denying his motion to suppress evidence on the grounds that police conducted an improper traffic stop; (2) denying his motion to suppress statements because there was no express waiver of his rights; and (3) admitting exhibits presented during the trial of his accomplice (Evans) without proper authentication.[36] Stewart also argued that there was insufficient

---

[32]Court Reporter's Record, vol. 2, Docket Entry No. 27-15, pp. 15, 122-23.

[33]Orders, Docket Entry No. 27-2, pp. 55-56.

[34]Judgment of Conviction by Jury, Docket Entry No. 27-2, p. 38.

[35]Court Reporter's Record, Vol. 8, Docket Entry No. 28-4, p. 51. Joshua Evans was also convicted of capital murder and sentenced to life imprisonment without parole in a separate trial. See Evans v. State, 440 S.W.3d 107 (Tex. App. — Waco 2013, pet. ref'd).

[36]Brief of Appellant, Docket Entry No. 27-4, p. 4.

evidence to show that he intended to cause the victim's death.[37] An intermediate court of appeals rejected all of Stewart's arguments and affirmed the conviction in an unpublished opinion, which summarized the pretrial proceedings and the evidence presented at trial. See Stewart v. State, No. 10-11-00291-CR, 2013 WL 3969824 (Tex. App. — Waco, Aug. 1, 2013). The Texas Court of Criminal Appeals summarily refused his petition for discretionary review. See Stewart v. State, PD-1183-13 (Tex. Crim. App. Jan. 15, 2014).

Stewart then challenged his conviction by seeking state habeas corpus review under Article 11.07 of the Texas Code of Criminal Procedure.[38] The state habeas corpus court, which also presided over the trial and pretrial proceedings, recommended that relief be denied after making detailed findings of fact and conclusions of law.[39] The Texas Court of Criminal Appeals agreed and denied relief without a written order based on the findings and conclusions made by the trial court.[40]

---

[37]Id.

[38]Application for a Writ of Habeas Corpus Under Code of Criminal Procedure, Article 11.07 ("State Habeas Application"), Docket Entry No. 29-2, pp. 6-44.

[39]Order to Transmit Habeas Corpus Record with Findings of Fact and Conclusions of Law ("Findings and Conclusions"), Docket Entry No. 29-5, pp. 39-62.

[40]Action Taken on Writ No. 84,419-02 (Tex. Crim. App. Sept. 21, 2016), Docket Entry No. 29-7, p. 1.

Stewart now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge his capital murder conviction. According to the Petition and Memorandum Brief in Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Memorandum Brief"), Docket Entry No. 2, Stewart raises the following claims for relief:

1.  During the suppression hearing, he was denied the right to confront and cross-examine witnesses who identified him (Greeno and Harris).

2.  His conviction was obtained with evidence seized during an unlawful search, therefore, he is actually innocent.

3.  The trial court erred by denying his motions to suppress without a valid reason.

4.  The evidence was insufficient to support his conviction for capital murder.

5.  The prosecutor engaged in misconduct by presenting evidence during the suppression hearing of an unadjudicated extraneous offense, namely, the robbery of Greeno and Harris; and the trial court abused its discretion by admitting this evidence without affording him the opportunity to confront and cross-examine the witnesses against him.

6.  He was denied effective assistance of counsel during his pretrial and trial proceedings.

7.  He was denied effective assistance of counsel on appeal.

8.  The state courts erred by holding that his unlawful stop and detention was reasonable.[41]

_____

[41]Petition, Docket Entry No. 1; Memorandum Brief, Docket Entry No. 2. Because Stewart is pro se, his pleadings are subject to a less stringent standard than those drafted by lawyers. See Haines
(continued...)

The respondent moves for summary judgment arguing that Stewart is not entitled to relief under the governing federal habeas corpus standard of review because two of his claims are procedurally barred (Claims 1 and 5) and that all of his claims are without merit.

## II. **Standard of Review**

To the extent that Stewart's claims were adjudicated on the merits in state court, his Petition is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d). Under the AEDPA a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Likewise, a court may not grant relief on a claim that presents a question of fact unless the petitioner shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

---

[41](...continued)
v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)). The court has considered all pleadings submitted by Stewart under this standard, including those documents identified in Stewart's Motion for Expansion of Record. See Docket Entry No. 35, p. 1 (referencing exhibits attached to the Petition and Memorandum Brief).

For purposes of review under § 2254(d)(1), "'[a] state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts.'" <u>Matamoros v. Stephens</u>, 783 F.3d 212, 215 (5th Cir. 2015) (citations omitted); <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 120 S. Ct. 1495, 1519-20 (2002). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." <u>Woods v. Donald</u>, 135 S. Ct. 1372, 1376 (2015) (quoting <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" <u>Id.</u> (quoting <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786-87 (2011)).

The AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' . . . [which] 'demands that state-court decisions be given the benefit of the doubt.'" <u>Renico v. Lett</u>, 130 S. Ct. 1855, 1862 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme

malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." <u>Richter</u>, 131 S. Ct. at 786 (quoting <u>Jackson v. Virginia</u>, 99 S. Ct. 2781, 2796, n.5 (1979) (Stevens, J., concurring)); <u>see also</u> <u>White</u>, 134 S. Ct. at 1702.

A state court's factual determinations are also entitled to great deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to the state court's implicit findings. <u>See</u> <u>Garcia v. Quarterman</u>, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing <u>Summers v. Dretke</u>, 431 F.3d 861, 876 (5th Cir. 2005); <u>Young v. Dretke</u>, 356 F.3d 616, 629 (5th Cir. 2004)). A federal habeas corpus court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" <u>Brumfield v. Cain</u>, 135 S. Ct. 2269, 2277 (2015) (quoting <u>Wood v. Allen</u>, 130 S. Ct. 841, 849 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." <u>Id.</u>

## III.  <u>Discussion</u>

### A.  The Confrontation Clause Claims (Claims 1 and 5)

In two related claims (Claims 1 and 5), Stewart argues that the trial court improperly admitted hearsay testimony from

detectives during the pretrial suppression hearing about the identification made by Greeno and Harris, who told police that Stewart robbed them at gunpoint one week before the capital murder occurred at the College Station Exxon.[42] Stewart argues that evidence of the identification was hearsay that was offered by the prosecutor and admitted by the trial court improperly in violation of the rules of evidence and the Confrontation Clause, which guarantees a defendant's right to confront and cross-examine his accusers.[43]

1.   These Claims Are Barred from Federal Review

The respondent notes that Claims 1 and 5 were rejected for procedural reasons on state habeas corpus review because Stewart failed to present them on direct appeal.[44] The respondent argues that Claims 1 and 5 are therefore barred from federal review by the doctrine of procedural default.[45]

The record confirms that the state habeas corpus court rejected the grounds asserted in Claims 1 and 5 for procedural reasons because these issues should have been raised on direct appeal, but were not.[46] In doing so the state habeas corpus court

_____

[42]Petition, Docket Entry No. 1, pp. 6-7, 12-13.

[43]Id.

[44]Respondent's MSJ, Docket Entry No. 26, pp. 10-12.

[45]Id.

[46]Findings and Conclusions, Docket Entry No. 29-5, pp. 40-42, 44-45 ¶¶ 8-11, 19-20.

-13-

relied on Ex parte Nelson, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004), which held that "habeas corpus cannot be used as a substitute for appeal, and that it may not be used to bring claims that could have been brought on appeal." See also Ex parte Richardson, 201 S.W.3d 712, 713-14 (Tex. Crim. App. 2006) (Emphasizing that "'the Great Writ [of habeas corpus] should not be used' to litigate matters 'which should have been raised on appeal[.]'") (quoting Ex parte Townsend, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004)). The Fifth Circuit has held that this state procedural rule is adequate to bar federal habeas corpus review. See Scheanette v. Quarterman, 482 F.3d 815, 827 (5th Cir. 2007) (recognizing that the Texas rule requiring a petitioner to present any claims based on the trial record on direct appeal, before raising them in a state habeas petition, is an "'adequate state ground capable of barring federal habeas review'") (quoting Busby v. Dretke, 359 F.3d 708, 719 (5th Cir. 2004)).

Where a petitioner has committed a procedural default, federal habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 111 S. Ct. 2546, 2565 (1991). To satisfy the exception reserved for fundamental miscarriages of justice a petitioner must provide the court with evidence that would support a "colorable claim of factual innocence." Kuhlmann v. Wilson, 106

-14-

S. Ct. 2616, 2627 (1986). Stewart makes no showing of factual innocence here, and he does not otherwise attempt to explain or demonstrate cause for his default. Accordingly, Claims 1 and 5 are procedurally barred from federal review.

### 2. Alternatively, These Claims Are Without Merit

Even if not procedurally barred Stewart cannot prevail on a claim that hearsay testimony was presented and admitted improperly during a pretrial suppression hearing. The state habeas corpus court, which also considered these claims in the alternative,[47] concluded that they were without merit because, subject to limited exceptions not applicable here, the rules of evidence do not apply during pretrial suppression hearings.[48] See Granados v. State, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002) (holding that the rules of evidence, except those applying to privileges, do not apply to suppression hearings); see also Ford v. State, 305 S.W.3d 530, 534-35 (Tex. Crim. App. 2009). The state habeas corpus court also

---

[47]Stewart argues that Claims 1 and 5 are not procedurally defaulted because the state habeas corpus court also rejected them on the merits. Petitioner's Traverse, Docket Entry No. 37, pp. 3-4. Stewart is mistaken. "The rule in this circuit is that, when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny habeas relief because of the procedural default" rather than reevaluating the claim on the merits. Hughes v. Dretke, 412 F.3d 582, 592 (5th Cir. 2005) (quoting Cook v. Lynaugh, 821 F.2d 1072, 1077 (5th Cir. 1987)); see also Sigala v. Quarterman, 338 F. App'x 388, 392-93 (5th Cir. 2009) (reciting the same rule).

[48]Findings and Conclusions, Docket Entry No. 29-5, pp. 42, 45 ¶¶ 12, 20.

concluded that the Sixth Amendment Confrontation Clause also does not apply during a suppression hearing because the right to confront and cross-examine witnesses is a trial right that is not implicated during pretrial proceedings.[49] <u>See</u> <u>Vanmeter v. State</u>, 165 S.W.3d 68, 74-75 (Tex. App. — Dallas 2005, pet. ref'd) (concluding that "the constitutional right of confrontation is a trial right, not a pretrial right," and therefore does not apply at pretrial suppression hearings).

Although the state habeas corpus court based its decision on Texas law, federal courts have also held that the rules of evidence and the Confrontation Clause do not apply during pretrial suppression hearings. <u>See, e.g.,</u> <u>United States v. Raddatz</u>, 100 S. Ct. 2406, 2414 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."); <u>Ebert v. Gaetz</u>, 610 F.3d 404, 414 (7th Cir. 2010) (holding that the Confrontation Clause "was not implicated" during a pretrial suppression hearing); <u>United States v. de la Fuente</u>, 548 F.2d 528, 533 (5th Cir. 1977) (explaining that "[a] trial court, in resolving preliminary fact questions concerning the admissibility of evidence, is not bound by the rules of evidence") (citing Fed. R. Evid. 104(a) and 1101(d)(1)).

Stewart does not identify any Supreme Court precedent holding that the Confrontation Clause or evidentiary rules regarding

---

[49]<u>Id.</u> at 42 (citation omitted).

hearsay apply during a pretrial suppression hearing and the court's own research has not located any. Thus, to the extent that the state habeas corpus court concluded that Claims 1 and 5 were without merit, Stewart does not show that this decision was contrary to clearly established Supreme Court precedent. Therefore, he is not entitled to federal habeas corpus relief on Claim 1 or Claim 5.

## B.    The Fourth Amendment Claims (Claims 2, 3, and 8)

In three overlapping claims for relief Stewart argues that he is entitled to relief because his conviction was obtained with evidence seized following his invalid arrest in violation of the Fourth Amendment. Stewart contends in Claim 2 that his arrest was invalid because it was the result of a "bogus" traffic stop conducted by Officer Mader.[50] Stewart repeats this contention in Claim 3, arguing that the trial court abused its discretion by denying his motion to suppress "without a valid reason" because Officer Mader's erroneous belief that he violated traffic laws was insufficient to justify the stop that led to his arrest.[51] Stewart repeats this contention again in Claim 8, arguing that the state court of appeals erred by affirming his conviction after holding that the traffic stop was supported by reasonable suspicion and

_____

[50]Petition, Docket Entry No. 1, pp. 6, 8.

[51]Petition, Docket Entry No. 1, pp. 9, 10; Memorandum Brief, Docket Entry No. 2, pp. 12-19.

-17-

that his arrest did not violate the Fourth Amendment.[52]  Arguing

that all of the evidence against him should have been suppressed,

Stewart reasons that there should not have been a trial and that he

is actually innocent as a result of the Fourth Amendment

violation.[53]  The respondent argues that these claims are "not

cognizable" on federal habeas corpus review or are without merit.[54]

   1.   Stewart's Actual Innocence Claim is Not Actionable

   A petitioner's claim of actual innocence, standing alone, is

not an actionable ground for relief on federal habeas corpus

review.  See Herrera v. Collins, 113 S. Ct. 853, 860 (1993)

("Claims of actual innocence . . . have never been held to state a

ground for federal habeas relief absent an independent

constitutional violation occurring in the underlying state criminal

proceeding.").  Instead, a claim of actual innocence is "a gateway

through which a habeas petitioner must pass to have his otherwise

[procedurally] barred constitutional claim considered on the

merits."  Id. at 862.  A petitioner must support his allegation of

actual innocence with "new reliable evidence" that was not

presented at trial and must show that "it is more likely than not

that no reasonable juror would have convicted him in the light of

_____

   [52]Petition, Docket Entry No. 1, p. 17; Memorandum Brief, Docket
Entry No. 2, p. 30.

   [53]Petition, Docket Entry No. 1, p. 6; Memorandum Brief, Docket
Entry No. 2, pp. 9-11.

   [54]Respondent's MSJ, Docket Entry No. 26, pp. 12-19, 48.

-18-

the new evidence." Schlup v. Delo, 115 S. Ct. 851, 865, 867 (1995). Stewart makes no effort to satisfy that showing.

Even assuming that a freestanding innocence claim were actionable on federal habeas review, the Supreme Court has emphasized that a showing of actual innocence would have an "extraordinarily high" threshold. Herrera, 113 S. Ct. at 869; see also House v. Bell, 126 S. Ct. 2064, 2086 (2006) (observing that such a "hypothetical freestanding innocence claim" would require "more convincing proof of innocence" than the gateway standard for excusing a procedural default under Schlup). Because Stewart does not present any evidence in support of his claim, he does not demonstrate that he has a credible claim of actual innocence.

2.  Stewart's Fourth Amendment Claims are Barred from Review

Because Stewart had an opportunity to litigate his Fourth Amendment claims in state court, federal habeas corpus review of those claims is barred by the Supreme Court's decision in Stone v. Powell, 96 S. Ct. 3037 (1976). The Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 3046. The Fifth Circuit has since interpreted an "opportunity for full and fair litigation" to mean just that: "an opportunity." Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002) (citing Caver v.

-19-

*Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a [F]ourth [A]mendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Id.*

Texas affords a process for criminal defendants to file a pretrial motion to suppress under Article 28.01 of the Texas Code of Criminal Procedure. Stewart availed himself of that process by filing a motion to suppress, which the trial court denied following a hearing.[55] Stewart's Fourth Amendment claims were also reviewed at length by the intermediate court of appeals, which found no Fourth Amendment violation, and by the Texas Court of Criminal Appeals, which denied Stewart's petition for discretionary review of that determination. *See Stewart v. State*, No. 10-11-00291-CR, 2013 WL 3969824, at *1-4 (Tex. App. — Waco, Aug. 1, 2013, pet. ref'd). Because Stewart had ample opportunity to challenge his arrest and the ensuing search in state court, his Fourth Amendment claims (Claims 2 and 3) are precluded from federal habeas review by the holding in *Stone v. Powell*.

3. *Alternatively, the Fourth Amendment Claims are Without Merit*

The respondent also argues that Stewart fails to show that the trial court denied his motion to suppress in error for reasons

---

[55]Court Reporter's Record, vol. 2, Docket Entry No. 27-15, pp. 1-148; Orders, Docket Entry No. 27-2, pp. 55-56.

outlined by the court of appeals.[56] Stewart challenged the trial court's decision, arguing that the traffic stop which led to his arrest was invalid.[57] He complained in particular that there was no reasonable suspicion to stop him because he did not commit a traffic offense, and the officer who detained him (Officer Mader) did not otherwise have a basis to suspect his involvement in criminal activity that would have justified the stop.[58]

"The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). For a traffic stop to satisfy the Fourth Amendment, "officers need only 'reasonable suspicion' — that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." Heien v. North Carolina, 135 S. Ct. 530, 536 (2014) (quoting Navarette v. California, 134 S. Ct. 1683, 1687-88 (2014)). A brief stop is permissible for purposes of investigating possible criminal behavior in order to determine the suspected individual's identity or to briefly maintain the status quo while obtaining more information. See Adams v. Williams, 92 S. Ct. 1921, 1923 (1972) (citing Terry v. Ohio, 88 S. Ct. 1868, 1879-80 (1968)); see also Arizona v. Johnson, 129 S. Ct. 781, 784 (2009) (observing that

---

[56]Respondent's MSJ, Docket Entry No. 26, pp. 13-19.

[57]Brief of Appellant, Docket Entry No. 27-4, pp. 23-40.

[58]Id. at 36-37, 39-40.

-21-

Terry authorizes investigatory detention of brief duration in a traffic-stop setting where the police officer has a reasonable suspicion that one of the occupants is committing or has committed a criminal offense).

The court of appeals provided a lengthy summary of the facts adduced during the suppression hearing. See Stewart, 2013 WL 3969824, at *1-4. The court of appeals noted that Officer Mader had viewed the security camera footage of the offense at the start of his shift and heard the BOLO identifying Stewart as a suspect wanted for questioning in connection with the robbery and murder before making the decision to stop the Lincoln based on the mistaken belief that Stewart had committed a traffic violation. Id. at *3. Without addressing whether Officer Mader's erroneous belief that Stewart committed a traffic violation was reasonable, the court of appeals rejected Stewart's claim, concluding that the "cumulative information" available to the officers who were investigating the murder "constituted reasonable suspicion that Stewart had been involved in criminal activity." Id. at *4. The court of appeals concluded, therefore, that the trial court did not err by denying Stewart's motion to suppress the evidence. Id.

In reaching its ultimate conclusion, the state court of appeals observed that "[t]he detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be

-22-

considered in determining whether reasonable suspicion exists."
Id. at *2 (quoting Derichsweiler v. State, 348 S.W.3d 906, 914
(Tex. Crim. App. 2011)). This is consistent with Fourth Amendment
jurisprudence from the United States Supreme Court, which has held
that an officer is permitted to make an investigatory stop based
upon a police bulletin that has been issued on the basis of
articulable facts supporting a reasonable suspicion that the person
has committed an offense. See United States v. Hensley, 105 S. Ct.
675, 682 (1985); see also United States v. Ibarra-Sanchez, 199 F.3d
753, 759-60 (5th Cir. 1999) (upholding a traffic stop and search by
officers acting on a police dispatcher's bulletin under the
"collective knowledge" doctrine) (citations omitted); United States
v. Gonzalez, 190 F.3d 668, 672 (5th Cir. 1999) (noting that "an
alert or BOLO report may provide the reasonable suspicion necessary
to justify an investigatory stop").

The facts outlined by the state court of appeals are presumed
correct for purposes of federal habeas corpus review, 28 U.S.C.
§ 2254(e)(1), and are supported by the record. As noted above, the
BOLO was issued after a witness (Jessica Greeno) identified Stewart
from surveillance footage of the offense as the man who robbed her
at gunpoint and provided the license plate number of the car he was
driving, which was off by one number, but otherwise matched a
Lincoln that was seen parked next to a dumpster where the stolen
Exxon store cash drawer was found.[59]  Based on this information and

---

[59]Court Reporter's Record, vol. 2, Docket Entry No. 27-15,
pp. 103-15.

the suspicions formed by Detective Junek, the BOLO was issued for Stewart and the vehicle, advising patrol officers that the passengers were wanted for questioning in connection with the robbery and murder at the Exxon.[60] Stewart does not demonstrate that the information provided was unreliable or insufficient to establish a reasonable suspicion for the vehicle stop. See Hensley, 105 S. Ct. at 682; Gonzalez, 190 F.3d at 672-73. Stewart does not otherwise show that the state court's decision to reject his Fourth Amendment claims was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Accordingly, Stewart fails to show that he is entitled to federal habeas corpus relief on any of his allegations arising under the Fourth Amendment (Claims 2, 3, and 8).

## C.   Sufficiency of the Evidence (Claim 4)

Stewart contends that the evidence was insufficient to support his conviction for capital murder because the State failed to prove that he "specifically" and "intentionally" caused the victim's death as charged in the indictment.[61] On habeas corpus review of a state court conviction, a challenge to the legal sufficiency of the evidence is governed by Jackson v. Virginia, 99 S. Ct. 2781 (1979), which reflects the federal constitutional due process standard. See In re Winship, 90 S. Ct. 1068, 1073 (1970) ("[T]he

---

[60]Id. at 9, 111-12.

[61]Petition, Docket Entry No. 1, pp. 9, 11.

Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 99 S. Ct. at 2789 (emphasis in original).

The Supreme Court has emphasized "that <u>Jackson</u> claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2062 (2012) (per curiam). A federal habeas corpus court questions only whether the state court's assessment of the already-strict <u>Jackson</u> standard was unreasonable. <u>See</u> 28 U.S.C. § 2254(d)(1). Together, <u>Jackson</u> and the AEDPA require a "double dose of deference that can rarely be surmounted." <u>Boyer v. Belleque</u>, 659 F.3d 957, 964 (9th Cir. 2011).

In conducting its review under this doubly deferential standard, the court looks to the last reasoned state judgment that considered and rejected the petitioner's federal claim. <u>See</u> <u>Ylst v. Nunnemaker</u>, 111 S. Ct. 2590, 2594 (1991). That judgment was issued by the intermediate court of appeals, which set forth the elements of the offense and concluded that there was sufficient evidence to support Stewart's capital murder conviction as charged under the Texas law of parties:

Capital Murder

A person commits capital murder if he intentionally causes the death of an individual while in the course of committing or attempting to commit robbery. Tex. Pen. Code Ann. § 19.03(a)(2) (West 2011); <u>Johnson v. State</u>, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992), <u>cert.</u> <u>denied</u>, 510 U.S. 852, 114 S. Ct. 154, 126 L.Ed.2d 115 (1993); <u>Frank v. State</u>, 183 S.W.3d 63, 72 (Tex. App. — Fort Worth 2005, pet. ref'd). The law of parties applies to the offense of capital murder. <u>Johnson</u>, 853 S.W.2d at 534; <u>Frank</u>, 183 S.W.3d at 72.

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Pen. Code Ann. § 7.01(a); <u>Frank</u>, 183 S.W.3d at 72. A person is "criminally responsible" for an offense committed by the conduct of another, if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Pen. Code Ann. § 7.02(a)(2); <u>Frank</u>, 183 S.W.3d at 72. Evidence is sufficient to convict under the law of parties when the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement. <u>Ransom v. State</u>, 920 S.W.2d 288, 302 (Tex. Crim. App.) (op. on reh'g), <u>cert.</u> <u>denied</u>, 519 U.S. 1030, 117 S. Ct. 587, 136 L.Ed.2d 516 (1996); <u>Frank</u>, 183 S.W.3d at 72-73. In determining whether a defendant participated in an offense as a party, the factfinder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. <u>Ransom</u>, 920 S.W.2d at 302; <u>Cordova v. State</u>, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), <u>cert.</u> <u>denied</u>, 476 U.S. 1101, 106 S. Ct. 1942, 90 L.Ed.2d 352 (1986); <u>Frank</u>, 183 S.W.3d at 73.

Further, section 7.02(b) of the penal code provides that

> [i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in

> furtherance of the unlawful purpose and was
> one that should have been anticipated as a
> result of the carrying out of the conspiracy.

Tex. Pen. Code Ann. § 7.02(b).

The jury was instructed that it could find Stewart guilty of capital murder in any of three different ways: (1) as a principal; (2) as a party under section 7.02(a)(2) of the Texas Penal Code; and (3) as a co-conspirator under section 7.02(b) of the Texas Penal Code. The jury returned a general verdict; therefore, if the evidence is sufficient to support a guilty finding under any of the allegations submitted, we must uphold the jury's guilty verdict. <u>Sorto v. State</u>, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005).

Stewart's complaint is limited to whether the evidence was sufficient to show that his accomplice had the specific intent to kill the victim. Therefore, our analysis and discussion of the facts will be limited to that issue.

Intent is most often proven through the circumstantial evidence surrounding the crime. <u>See</u> <u>Sholars v. State</u>, 312 S.W.3d 694, 703 (Tex. App. — Houston [1st Dist.] 2009, pet. ref'd). Intent to kill may be inferred from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. <u>See</u> <u>Ross v. State</u>, 861 S.W.2d 870, 873 (Tex. Crim. App. 1992). If a deadly weapon is used in a deadly manner, the inference is almost conclusive that the defendant intended to kill. <u>See</u> <u>Godsey v. State</u>, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986).

**Relevant Facts**

Stewart's accomplice, Joshua Evans, entered an Exxon in College Station to rob it armed with a loaded .22 caliber revolver. Stewart entered approximately ten seconds after Evans. Kinny, the victim, was a clerk at the store. The security camera footage showed that Evans pointed the revolver at Kinny when he saw Kinny. Kinny advanced toward Evans holding his hands up. Evans pulled the revolver to his side, with Kinny still coming toward him. When Kinny was close to Evans, Evans raised the revolver again and pointed it toward Kinny. Evans and Kinny scuffled and at some point, Kinny was shot by

Evans. Kinny continued scuffling with Evans until he collapsed.

Stewart claimed that Kinny collapsed on top of Evans, and in an effort to get Kinny off of Evans, he may have "poked" Kinny with the knife he was carrying. Kinny suffered two stab wounds to his back, one of which was 2 inches deep, which the medical examiner believed occurred after the shooting. Kinny died from the gunshot wound.

Stewart presented evidence that the revolver that was shown to be the murder weapon was old and in disrepair and would have been very difficult to fire.

Stewart argues that because Kinny continued advancing after Evans lowered the weapon to his side the first time and because there was some evidence presented at trial that the revolver might have malfunctioned due to its poor condition, the evidence was insufficient. However, our review of the record demonstrates that the jury could have determined beyond a reasonable doubt that Evans intended to kill Kinny. Evans brought a revolver loaded with hollow point bullets to the Exxon, and immediately pointed it at Kinny upon making contact with him. Although Evans did lower his arm, he raised it again as he was stepping aside to dodge Kinny's advances, which could reasonably have been viewed as an attempt to disarm Evans. There was evidence that Kinny could have been shot when Evans raised his arm the second time based on the trajectory of the bullet in Kinny's body. Stewart admitted that he knew that Evans carried a firearm with him everywhere he went in case he needed it. The jury was entitled to believe or disbelieve the testimony regarding whether or not the revolver discharged accidentally or intentionally. Viewing all of the evidence in a light most favorable to the verdict, we find that the evidence was sufficient for the jury to have found that Evans intended to kill Kinny. We overrule [this issue].

Stewart v. State, No. 10-11-000291-CR, 2013 WL 3969824, *5-7 (Tex. App. — Waco Aug. 1, 2013, pet. ref'd). In reaching this conclusion, the court of appeals expressly followed the standard announced in Jackson for evaluating challenges to the sufficiency of the evidence. See Stewart, 2013 WL 3969824, at *4-5.

Stewart does not take issue with any particular finding or conclusion by the state court of appeals,[62] whose opinion is entitled to "great weight." Parker v. Procunier, 763 F.2d 665, 666 (5th Cir. 1985) (citing Jackson, 99 S. Ct. at 2790, n.15); see also Callins v. Collins, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference."). Viewing all of the evidence under the doubly deferential standard that applies on federal habeas review, Stewart has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief under Jackson. The court's own review of the record shows that there was more than sufficient evidence to support the verdict. Therefore, Stewart's challenge to the sufficiency of the evidence (Claim 4) is without merit.

## D.    Ineffective Assistance of Counsel at Trial (Claim 6)

In Claim 6 Stewart contends that he is entitled to relief because he was denied effective assistance of counsel during his pretrial and trial proceedings. In several sub-claims Stewart contends that his defense counsel was deficient for failing to

---

[62]In making his challenge to the sufficiency of the evidence, Stewart attempts to argue that the State created a fatal variance by charging him as if he were the "primary shooter," but presenting a theory based on conspiracy or law of the parties at trial. Petition, Docket Entry No. 1, p. 11; Memorandum Brief, Docket Entry No. 2, p. 19. This argument is without merit for the reasons discussed further below in connection with a similar claim that Stewart makes regarding his defense counsel's failure to object to the State's theory of the case.

(a) attack impermissibly suggestive identifications conducted by detectives; (b) argue that testimony from Detective Johse was inconsistent with testimony from Sergeant Woodward and Detective Junek regarding the BOLO; (c) argue that a probable cause statement prepared by detectives in support of their request for search warrants was inconsistent with the State's theory of the case at trial; (d) attack Detective Johse's testimony about the photo array that he showed to Jessica Greeno and Devoris Harris; (e) attack the sufficiency of affidavits prepared by Detective Johse, which improperly used information obtained from the invalid traffic stop of his vehicle; (f) argue that officers failed to corroborate or establish Greeno and Harris's reliability concerning their pretrial identification; (g) adequately cross-examine Officer Mader about the traffic stop; (h) question Officer Mader about whether or not he issued a citation for the traffic stop; (i) argue that the traffic stop of his vehicle immediately escalated beyond an investigatory stop; and (j) argue that he was interviewed by Detective Lacox after his vehicle was stopped based on reasonable suspicion, rather than probable cause.[63]

As the state habeas corpus court correctly noted, claims for ineffective assistance of counsel are governed by the standard found in <u>Strickland v. Washington</u>, 104 S. Ct. 2052 (1984).[64]   To

---

[63]Petition, Docket Entry No. 1, pp. 14-15; Memorandum Brief, Docket Entry No. 2, pp. 21-30.

[64]Findings and Conclusions, Docket Entry No. 29-5, pp. 46-48, 51-58 ¶¶ 23-29, 36-51 (referencing the <u>Strickland</u> standard).
(continued...)

prevail under the <u>Strickland</u> standard a defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. <u>Id.</u> at 2064. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." <u>Id.</u>

"To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" <u>Hoffman v. Cain</u>, 752 F.3d 430, 440 (5th Cir. 2014) (quoting <u>Strickland</u>, 104 S. Ct. at 2064), <u>cert. denied</u>, 135 S. Ct. 1160 (2015). This is a "highly deferential" inquiry; "[t]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>Id.</u> (quoting <u>Strickland</u>, 104 S. Ct. at 2065).

To satisfy the prejudice prong "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 104 S. Ct. at 2068. A habeas petitioner must "affirmatively prove prejudice." <u>Id.</u> at 2067. A petitioner

---

[64](...continued)
Although Stewart argues that his counsel's deficiencies are tantamount to a denial of counsel for which prejudice is presumed, <u>see</u> Memorandum Brief, Docket Entry No. 2, pp. 24, 26-30 (citing <u>United States v. Cronic</u>, 104 S. Ct. 2039, 2047 (1984)), the trial transcript refutes Stewart's claim that his attorney failed to subject the State's case to meaningful adversarial testing; <u>Cronic</u>, therefore, is not applicable.

cannot satisfy the second prong of <u>Strickland</u> with mere speculation and conjecture. <u>See</u> <u>Bradford v. Whitley</u>, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to demonstrate either deficient performance or actual prejudice. <u>See</u> <u>Day v. Quarterman</u>, 566 F.3d 527, 540-41 (5th Cir. 2009); <u>see also</u> <u>Lincecum v. Collins</u>, 958 F.2d 1271, 1279-80 (5th Cir. 1992) (stating that an ineffectiveness claim based on speculation or conclusional rhetoric will not warrant relief).

Because the petitioner's ineffective-assistance claims were rejected by the state court, the issue is not whether this court "'believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1420 (2009) (citation omitted). In addition, "because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id.</u> When applied in tandem with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. <u>Id.</u> at 1413; <u>see</u> <u>also</u> <u>Richter</u>, 131 S. Ct. at 788 (emphasizing that the standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); <u>Beatty v. Stephens</u>, 759 F.3d 455, 463 (5th Cir. 2014) (same).

1.  <u>Failure to Challenge the Pretrial Identification</u>

Stewart presents three related sub-claims that take issue with counsel's failure to object to the reliability of the pretrial identification by Jessica Greeno and Devoris Harris. In Claim 6(a) Stewart contends that his trial counsel was deficient for failing to argue that the procedures employed by police to obtain his identification were impermissibly suggestive.[65] Stewart argues in particular that counsel should have, but did not, argue that it was unreasonable for Detective Johse to show Greeno and Harris surveillance footage of the offense before conducting a photo array.[66] In Claim 6(d) Stewart contends that his counsel should have challenged Detective Johse's testimony about the timing of the photo-array as inconsistent with statements that he made in a probable cause statement, which would have undercut Johse's credibility during the suppression hearing.[67] In Claim 6(f) Stewart faults his counsel for failing to argue that Detective Johse's "independent investigation" failed to corroborate the details of Greeno and Harris's identification, which Stewart characterizes as "stale" and unreliable.[68]

---

[65]Memorandum Brief, Docket Entry No. 2, p. 22.

[66]<u>Id.</u>

[67]<u>Id.</u> at 24-25.

[68]<u>Id.</u> at 26-27.

The state habeas corpus court rejected these claims and found
no deficient performance after considering the law concerning
impermissibly suggestive pretrial photographic identifications:

> . . . The test is whether, considering the totality of
> the circumstances, "the photograph identification
> procedure was so impermissibly suggestive as to give rise
> to a very substantial likelihood of irreparable
> misidentification." Reliability is the linchpin in
> determining the admissibility of identification
> testimony. The following five non-exclusive factors
> should be "weighed against the corrupting effect of any
> suggestive identification procedure in assessing
> reliability under the totality of the circumstances":
> (1) the opportunity of the witness to view the criminal
> at the time of the crime; (2) the witness' degree of
> attention; (3) the accuracy of the witness' prior
> description of the criminal; (4) the level of certainty
> demonstrated by the witness at the confrontation; and
> (5) the length of time between the crime and the
> confrontation.[69]

See also Lavernia v. Lynaugh, 845 F.2d 493, 500 (5th Cir. 1988)
(outlining the federal standard, which is that "'[r]eliability is
the linchpin in determining the admissibility of identification
testimony,'" and listing the same five factors identified by the
state habeas court) (quoting Manson v. Brathwaite, 97 S. Ct. 2243,
2253 (1977)).

After setting out the applicable legal standard, the state
habeas corpus court concluded that the identifications made by
Greeno and Harris were "reliable and not the result of any
suggestive identification procedure," based on the following
findings of fact:

---

[69]Findings and Conclusions, Docket Entry No. 29-5, p. 47 ¶ 26.

28. The Court finds that the offense occurred on April 2, 2010. (CR at 1). That same day, Det. Johse interviewed two victims for the March 27, 2010 robbery: Jessica Greeno and Devoris Harris. (2 RR 103). They stated that three African American males robbed them just seven days before; one of them had a long barreled revolver. (2 RR 104). More importantly, Greeno stated that, thirty minutes before being interviewed by Johse, she saw the suspect who robbed her with the revolver; she saw him at Frankie's Exxon, which is located at Texas Avenue and Harvey Mitchell. (2 RR 105). She identified the suspect as being 5'7" to 5'8" and between 220 and 230 pounds. (2 RR 106). The suspect was driving a white and blue Lincoln with a license plate of HCK 814.

29. The Court finds that Greeno's and Harris'[s] identifications were reliable and not the result of any suggestive identification procedure. Both Greeno and Harris stated that they were able to view [Stewart] at the time of the crime and then viewed him again just seven days later and 30 minutes before being interviewed by Johse. They were also able to provide a description of [Stewart's] vehicle and an almost exact recitation of the license plate number. There is nothing in the record to demonstrate that the pretrial identification was impermissibly suggestive because of the manner in which the procedure was conducted. Had trial counsel objected, this Court would have properly overruled said objection. Consequently, [Stewart] has failed to prove that any motion would have been granted in order to satisfy Strickland. See Roberson v. State, 852 S.W.2d at 510-12.[70]

The state habeas corpus court reinforced these findings when rejecting Stewart's claims about Detective Johse's testimony, noting that citizen informants who identify themselves to law enforcement, as Greeno and Harris did in this case, are inherently reliable and that the identification was corroborated in this instance with evidence recovered from Stewart's vehicle after it was stopped by Officer Mader.[71]

---

[70]Id. at 47-48 ¶¶ 28-29.

[71]Id. at 55 ¶ 46 (citing State v. Duarte, 389 S.W.3d 349, 357 (Tex. Crim. App. 2012)).

The findings made by the state habeas corpus court, which presided over the suppression hearing and trial, are supported by the record. Because Stewart does not present clear and convincing evidence to refute those findings, they are presumed correct for purposes of federal habeas corpus review. See 28 U.S.C. § 2254(e)(1); see also Livingston v. Johnson, 107 F.3d 297, 310 (5th Cir. 1997) (findings of fact made in the course of determining the admissibility of identification testimony are afforded the presumption of correctness).

Stewart does not demonstrate that Greeno and Harris were unreliable or that any inconsistent statement made by Detective Johse rendered the pretrial identification inadmissible. Stewart does not otherwise allege facts showing that his identification was obtained by impermissibly suggestive means, and he does not propose any objection that his counsel could have made that would have been sustained. Based on this record Stewart has not established that his defense counsel was ineffective with respect to his pretrial identification, and he has not shown that the state court's conclusion was objectively unreasonable or wrong. Therefore, he is not entitled to relief on Claims 6(a), 6(d), and 6(f).

2.  Failure to Challenge Inconsistent Testimony

In Claim 6(b) Stewart contends that his defense counsel was deficient for failing to argue that testimony from Sergeant Woodward and Detective Junek at trial was inconsistent with testimony by Detective Johse at the pretrial suppression hearing

regarding Stewart's identification as a suspect for purposes of issuing the BOLO.[72] In support of this claim Stewart notes that Detective Johse testified at the pretrial hearing that the BOLO was issued for the Lincoln after Greeno and Harris identified him from security footage as the man who robbed them at gunpoint on March 27, 2010, but at trial Sergeant Woodward testified that the BOLO was issued after Detective Junek received information during his investigation from "unidentified sources" who saw Stewart leave the apartment complex in the company of a man (Evans) who matched the description of the second suspect.[73]

The state habeas corpus court summarily rejected this claim after finding that Stewart failed to show that defense counsel's performance fell below professional norms with respect to her cross-examination of the detectives.[74] The state habeas corpus court concluded, moreover, that Stewart failed to show that he was harmed or that "the result of his trial would have been different had counsel argued the alleged inconsistencies."[75] Consequently, the state habeas corpus court concluded that Stewart failed to establish deficient performance or actual prejudice.[76]

---

[72]Memorandum Brief, Docket Entry No. 2, p. 23.

[73]Id.

[74]Findings and Conclusions, Docket Entry No. 29-5, p. 53 ¶ 40.

[75]Id.

[76]Id.

In reviewing ineffective-assistance claims a federal habeas corpus court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 104 S. Ct. at 2065 (citation omitted). This court has reviewed the testimony given by Detective Junek and Detective Johse at the pretrial hearing and the trial, as well as trial testimony given by the lead detective, Sergeant Woodward, who did not testify at the suppression hearing.[77] From this review it is evident that the alleged inconsistency concerns the manner in which the State chose to explain to the jury how Stewart first became a suspect. To do so, the State presented testimony at trial about how Detective Junek first became suspicious of Stewart after questioning him outside his apartment, which was located near the Exxon crime scene and the dumpster where the stolen cash drawer was recovered, rather than presenting testimony about the pretrial identification made by Greeno and Harris.[78] Defense counsel likely did not highlight what Stewart

---

[77]Court Reporter's Record, vol. 2, Docket Entry No. 27-15, pp. 33-64 (Det. Junek - pretrial); pp. 96-135 Det. Johse - pretrial); Court Reporter's Record, vol. 6 (part one), Docket Entry No. 27-20, pp. 226-39 (Sergeant Woodward - trial); Court Reporter's Record, vol. 6 (part two), Docket Entry No. 28-1, pp. 1-11 (Sergeant Woodward, continued).

[78]Court Reporter's Record, vol. 6 (part two), Docket Entry No. 28-1, pp. 41-68 (Detective Junek - trial).

characterizes as an inconsistency because doing so would have opened the door to testimony about how Greeno and Harris identified Stewart as the man who robbed them at gunpoint during another offense that was committed the week before Kinny was murdered at the College Station Exxon.

Based on this record Stewart's allegations are not sufficient to overcome the presumption that defense counsel's performance was consistent with reasonable trial strategy or to demonstrate that she was deficient for failing to challenge the alleged inconsistency. Nor has Stewart shown that he was actually prejudiced as a result of any failure to object on his counsel's part. As a result, he has failed to show that the state habeas corpus court's conclusion was objectively unreasonable or that he is entitled to relief on Claim 6(b).

### 3. Failure to Challenge the State's Inconsistent Theory

In Claim 6(c) Stewart argues that his defense counsel was deficient for failing to argue that the State's theory of his involvement in the case was inconsistent with the probable cause statement prepared by Detective Johse and the indictment.[79] In support of this claim Stewart notes that both the probable cause statement drafted by Detective Johse and the indictment charged him with intentionally killing Johannes Kinny as if Stewart were the "primary shooter," but that the evidence presented at trial and the

---

[79]Memorandum Brief, Docket Entry No. 2, pp. 23-24.

theory pursued by the State was that Evans killed Kinny and that Stewart was a co-conspirator or party to the offense.[80]

The state habeas corpus court summarily rejected this claim in the same manner that it rejected Claim 6(b).[81] Stewart has not demonstrated that the state court's decision was unreasonable. Stewart argues in another part of his pleadings that by alleging one theory in the indictment and pursuing another at trial there was a fatal variance between the indictment and the evidence.[82] This argument, which is premised on the State's failure to expressly charge him as a co-conspirator under the law of parties, lacks merit because in Texas "a person can be convicted as a party even if the indictment does not explicitly charge him as a party." Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006) (citing Marable v. State, 85 S.W.3d 287, 288 (Tex. Crim. App. 2002)); see also Garcia v. State, 486 S.W.3d 602, 607-08 (Tex. App. — San Antonio 2015, pet. ref'd) (observing that the law of parties is properly included in the jury charge even when the indictment only alleged that the defendant acted as the principal actor) (citations omitted). The same is true in federal court. See, e.g., United States v. Thomas, 690 F.3d 358, 370 (5th Cir. 2012) ("Aiding and abetting is an alternate charge in every federal indictment.");

---

[80]Id. at 24.

[81]Findings and Conclusions, Docket Entry No. 29-5, p. 53 ¶ 40.

[82]Petition, Docket Entry No. 1, p. 11; Memorandum Brief, Docket Entry No. 2, pp. 19, 23-24.

United States v. Neal, 951 F.2d 630, 633 (5th Cir. 1992) (explaining that "aiding and abetting" as a party is not a separate offense that must be pled in an indictment).

Stewart does not allege facts showing that his defense counsel had a valid objection to make or that the result of his trial would have been different but for his counsel's failure to challenge any inconsistency between the charging instrument and the theory presented at trial. Because Stewart has not otherwise demonstrated that a constitutional violation occurred as the result of a variance, or from the manner in which the State pursued its theory of the case, he has not demonstrated that the state habeas corpus court's decision to reject this claim was objectively unreasonable or that he is entitled to relief on Claim 6(c).

### 4. Failure to Attack Detective Johse's Affidavits

In Claim 6(e) Stewart contends that Detective Johse "prematurely" prepared probable cause affidavits for his arrest and for search warrants.[83] Stewart argues that his defense counsel was deficient for failing to challenge the probable cause affidavits on the grounds that they contained information obtained from the invalid stop of his vehicle.[84]

The state habeas corpus court rejected this claim after observing that Stewart's motion to suppress evidence based on the

---

[83]Memorandum Brief, Docket Entry No. 2, pp. 25-26.

[84]Id. at 25.

traffic stop was properly overruled and that "[a]ny information obtained from the stop of the vehicle was properly used in any probable cause affidavit."[85]  The state habeas corpus court therefore concluded that Stewart failed to demonstrate deficient performance or actual prejudice because he did not show that there was a reasonable probability that the result of the proceeding would have been different if his counsel had objected.[86]

Stewart does not allege facts showing that the probable cause affidavits were legally insufficient or that his counsel had a valid objection to make.  His conclusory allegations are insufficient to establish an ineffective-assistance claim.  See Day, 566 F.3d at 540-41. Stewart does not otherwise demonstrate that the state court's decision to reject his claim was objectively unreasonable under the highly deferential Strickland standard. Accordingly, Stewart is not entitled to relief on the allegations asserted in Claim 6(e).

### 5.  Failure to Adequately Cross-Examine Officer Mader

Stewart raises two related claims that take issue with his defense counsel's effort to question Officer Mader about the traffic stop that resulted in his arrest.  In Claim 6(g) Stewart contends that defense counsel was generally deficient for failing to adequately cross-examine Officer Mader about the traffic stop in

---

[85]Findings and Conclusions, Docket Entry No. 29-5, p. 54 ¶ 41.

[86]Id. at 55-56 ¶¶ 44-45.

-42-

an effort to show that it was invalid.[87]  In Claim 6(h) Stewart
faults his counsel in particular for failing to question Officer
Mader about whether or not he issued a citation for the traffic
violation.[88]  The state habeas corpus court rejected these claims,
concluding that Stewart failed to demonstrate deficient performance
or prove actual prejudice.[89]

The record shows that defense counsel skillfully questioned
Officer Mader about the traffic stop during the pretrial
suppression hearing.[90]  Defense counsel also questioned Officer
Mader during trial, specifically with regard to whether there was
a reasonable suspicion or probable cause for the traffic stop.[91]
During both proceedings Mader admitted that he was mistaken about
whether a traffic violation had, in fact, occurred.[92]  Under these
circumstances, Stewart does not show that the issuance of a traffic
citation or lack thereof is material.  He does not otherwise
propose any particular questions that his counsel failed to ask

---

[87]Memorandum Brief, Docket Entry No. 2, pp. 27-28.

[88]Id. at 28.

[89]Findings and Conclusions, Docket Entry No. 29-5, pp. 56-58
¶¶ 45-51.

[90]Court Reporter's Record, vol. 2, Docket Entry No. 27-15,
pp. 16-28.

[91]Court Reporter's Record, vol. 6 (part two), Docket Entry
No. 28-1, pp. 81-85.

[92]Court Reporter's Record, vol. 2, Docket Entry No. 27-15,
p. 15; Court Reporter's Record, vol. 6 (part two), Docket Entry
No. 28-1, p. 82.

that would have made a difference in the result of his proceeding. Because his bare allegations are insufficient to demonstrate deficient performance or actual prejudice under <u>Strickland</u>, Stewart fails to demonstrate that the state court's decision was unreasonable or that he is entitled to relief on Claims 6(g) and 6(h).

### 6. <u>Failure to Adequately Challenge the Traffic Stop</u>

Stewart's remaining ineffective-assistance allegations against his trial counsel concern the failure to adequately challenge the traffic stop on Fourth Amendment grounds at the pretrial suppression hearing. In Claim 6(i) Stewart contends that counsel was deficient for failing to argue that his arrest was invalid because the traffic stop of his vehicle immediately escalated beyond an investigatory stop.[93] In Claim 6(j) Stewart contends that his counsel should have argued that he was interviewed by Detective Lacox after his vehicle was stopped based on reasonable suspicion, rather than probable cause.[94]

The state habeas corpus court rejected these claims after determining that Stewart failed to establish that his counsel's performance was deficient.[95] The state habeas corpus court concluded further that Stewart failed to present any argument

---

[93]Memorandum Brief, Docket Entry No. 2, pp. 28-29.

[94]<u>Id.</u> at 29.

[95]Findings and Conclusions, Docket Entry No. 29-5, p. 57 ¶ 50.

showing that, but for his attorney's deficient performance, a motion to suppress would have been granted.[96]

An attorney's failure to adequately litigate a Fourth Amendment claim may constitute deficient performance under the Strickland standard if the evidence would have been suppressed as the result of a properly urged objection or motion to suppress. See Ward v. Dretke, 420 F.3d 479, 488 (5th Cir. 2005). The petitioner bears the burden of proving that the evidence at issue would have been suppressed as a result of an adequate motion or objection by his counsel and that, absent the excludable evidence, the verdict at his trial would have been different. See Kimmelman v. Morrison, 106 S. Ct. 2574, 2583 (1986). Stewart does not meet that burden because, for reasons referenced previously in connection with his Fourth Amendment claims (Claims 2, 3, and 8), he has not shown that his conviction was obtained as the result of an unlawful search and seizure or that a Fourth Amendment violation occurred. Stewart does not otherwise demonstrate that the state court's decision to reject his claim was objectively unreasonable. Therefore, Stewart is not entitled to relief on Claims 6(i) and 6(j).

## E. Ineffective Assistance of Counsel on Appeal (Claim 7)

In Claim 7 Stewart contends that he was denied effective assistance of counsel on appeal because his attorney failed to

---

[96]Id. at 58 ¶ 51.

thoroughly argue that the traffic stop which led to his arrest was unreasonable.[97]  In making this claim Stewart lists several allegations that are similar to those lodged against his trial counsel in Claims 6(i) and 6(j).  Specifically, Stewart alleges that his appellate attorney failed to (1) argue issues that his trial counsel failed to address concerning the unlawful stop of his vehicle; (2) argue that his arrest was unlawful because the traffic stop immediately escalated beyond an investigatory stop; (3) argue that he was seized and then transported to the police station based on a reasonable suspicion, rather than probable cause; and (4) address the fact that affidavits prepared by Detective Johse failed to establish Greeno and Harris's reliability concerning the information that they provided prior to the stop of his vehicle.[98]

To establish that appellate counsel's performance was deficient under the <u>Strickland</u> standard the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them.  <u>Smith v. Robbins</u>, 120 S. Ct. 746, 764 (2000).  If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal."  <u>Id.</u>

---

[97]Petition, Docket Entry No. 1, p. 16.

[98]<u>Id.</u>

Stewart's appellate attorney provided a detailed affidavit in response to his allegations of ineffective-assistance, explaining that each of Stewart's proposed arguments was without merit under the circumstances of his case.[99]  The state habeas corpus court found that counsel's affidavit was "credible" and that Stewart was not entitled to relief because he failed to establish either prong of <u>Strickland</u> with respect to any of his claims.[100]

In the Memorandum Brief submitted in support of his Petition Stewart references two cases in support of his claim that counsel should have argued that the traffic stop immediately escalated beyond an investigative detention: <u>United States v. Roch</u>, 5 F.3d 894 (5th Cir. 1993), and <u>State v. Crisp</u>, 74 S.W.3d 474 (Tex. App. — Waco 2002, no pet.).[101]  The defendants in both of those cases, however, were immediately placed on the ground and handcuffed without any questioning by police respecting their identities or other inquiries of an investigative nature.  <u>See</u> <u>Roch</u>, F.3d at 897; <u>Crisp</u>, 74 S.W.3d at 482.  Stewart, who was placed under arrest for a traffic violation and for failure to produce a driver's license,[102] does not articulate facts showing that he was treated in

---

[99]Affidavit of Mary Hennessy, Docket Entry No. 29-4, pp. 81-90.

[100]Findings and Conclusions, Docket Entry No. 29-5, p. 59 ¶¶ 52(d)-55.

[101]Memorandum Brief, Docket Entry No. 2, p. 30.

[102]Court Reporter's Record, vol. 2, Docket Entry No. 27-15, pp. 12-14.

a manner similar to the defendants in <u>Roch</u> or <u>Crisp</u>.  Therefore, those cases are distinguishable.

Stewart also references <u>Florida v. J.L.</u>, 120 S. Ct. 1375, 1379-80 (2000), in which the Supreme Court held that an anonymous tip, standing alone, was insufficient to establish reasonable suspicion for an investigative detention.[103]  That case is distinguishable from Stewart's case because the BOLO that resulted in the traffic stop of his vehicle was based on information provided by two citizens (Greeno and Harris) who were interviewed in person by a detective.[104]  The information provided by Greeno and Harris was corroborated by other facts that had been uncovered during the investigation, such as the fact that the Lincoln described by Greeno was parked next to the dumpster where the stolen cash drawer was recovered and Detective Junek's previous encounter with Stewart.[105]  Stewart does not otherwise allege facts showing that the BOLO was based on insufficient or unreliable information, and he does not demonstrate that the holding in <u>J.L.</u> applies to his benefit.

For reasons discussed previously in connection with Claims 2, 3, and 8, Stewart has not shown that the trial court erred in denying his motion to suppress or that his conviction was tainted

---

[103]Memorandum Brief, Docket Entry No. 2, p. 30.

[104]Court Reporter's Record, vol. 2, Docket Entry No. 27-15, pp. 103-112.

[105]<u>Id.</u> at 37-48, 111.

by a Fourth Amendment violation. Stewart does not otherwise articulate facts showing that appellate counsel was deficient for failing to raise any of the arguments that he proposes in his pleadings. To the extent that he takes issue with the way in which his attorney litigated his Fourth Amendment claim on appeal, he does not demonstrate that she had any other meritorious ground for relief to assert on direct appeal or that the result of his appeal would have been any different if his attorney had raised any particular argument. Stewart's allegations are insufficient to demonstrate either deficient performance or actual prejudice and do not articulate a valid claim for relief. See Day, 566 F.3d at 540-41. Because Stewart has failed to establish deficient performance or actual prejudice, he does not show that the state court unreasonably rejected this claim, and he is not entitled to relief on this issue. Because Stewart has failed to establish any valid claim for relief in this case, Respondent's MSJ will be granted and the Petition will be denied.

## IV. <u>Certificate of Appealability</u>

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to

demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" <u>Tennard v. Dretke</u>, 124 S. Ct. 2562, 2565 (2004) (quoting <u>Slack v. McDaniel</u>, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show "'that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 123 S. Ct. 1029, 1039 (2003). Where denial of relief is based on procedural grounds the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, <u>sua sponte</u>, without requiring further briefing or argument. <u>See</u> <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V. Conclusion and Order

The court **ORDERS** as follows:

1.   Petitioner Corey Stewart's Motion for Expansion of
     Record to include certain exhibits (Docket Entry
     No. 35) is **GRANTED**.

2.   Respondent Lorie Davis's Motion for Summary
     Judgment (Docket Entry No. 26) is **GRANTED**.

3.   Stewart's Petition for a Writ of Habeas Corpus By a
     Person in State Custody (Docket Entry No. 1) is
     **DENIED**, and this action will be dismissed with
     prejudice.

4.   Stewart's Motion for Appointment of Counsel (Docket
     Entry No. 36) is **DENIED**.

5.   A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and

Order to the parties.

**SIGNED** at Houston, Texas, on this 20th day of December, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE